**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|                |     |                               |
|----------------|-----|-------------------------------|
| MARK GOMEZ,    | §   |                               |
|                | §   |                               |
|                | §   |                               |
| Plaintiff,     | §   |                               |
|                | §   |                               |
| v.             | §   | Civil Action No. 2:13-cv-00372-JRG |
|                | §   |                               |
| ERICSSON, INC.,| §   |                               |
|                | §   |                               |
| Defendant.     | §   |                               |
|                | §   |                               |
|                | §   |                               |
|                | §   |                               |

## MEMORANDUM AND OPINION

Before the Court is Plaintiff Mark Gomez's ("Gomez") Motion for Judgment Concerning Jurisdiction, wherein Gomez seeks a determination of this Court's jurisdiction in this matter.   (*See* Dkt. No. 7.)   Having considered the parties' written submissions, the Court concludes that jurisdiction is proper.

### I.      Background

This case involves a dispute between Plaintiff Gomez and his former employer Ericsson, Inc. ("Ericsson"), concerning certain payment allegedly due under an employment severance agreement.   Ericsson sponsors two separate severance plans for qualified employees – the Standard Severance Plan ("Standard Plan") and the Top Contributor Severance Plan ("Top Contributor Plan").   Gomez began working for Ericsson on or around November 17, 2008.   He first participated in the Standard Plan and subsequently became eligible to participate in the Top Contributor Plan.   On July 28, 2011, Ericsson terminated Gomez's employment as part of a

1

layoff.   On August 4, 2011, Gomez signed a Release and Severance Agreement ("Severance Agreement"), under which Ericsson promised to pay Gomez employee severance compensation pursuant to the terms of the Standard Plan and the Top Contributor Plan.   In exchange, Gomez agreed to waive certain claims against Ericsson and to deliver to Ericsson all Ericsson equipment and other properties in his possession.   Ericsson had issued a laptop computer to Gomez during the course of his employment.

Gomez submitted a claim for severance benefits on October 5, 2011, which Ericsson denied, allegedly on the basis that Gomez had wiped the hard drive of the laptop computer clean before returning it and only provided the data separately without his personal information.   Upon the initial denial of his claim for benefits, Gomez submitted an appeal within Ericsson on April 6, 2012.   Ericsson's final decision denying his benefits was issued on August 2, 2102.

 Gomez filed suit against Ericsson on April 30, 2013, seeking to recover the severance payment due him "under the terms of the Standard Plan, Top Contributor Plan, and the Severance Agreement."  (Complaint, Dkt. No. 1.)  Gomez's Complaint alleges that this case either arises under § 502(a)(1)(B) of the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA"), or it arises under Texas common law for breach of contract.  *Id.*   On September 30, 2013, Gomez filed the instant motion seeking a determination that Ericsson's severance plans fall outside ERISA, and thus his claim against Ericsson is a state law claim over which this Court has no subject matter jurisdiction.

## II.    Applicable Law

Congress enacted ERISA to "protect the interests of participants and beneficiaries [in employee welfare and pension benefit plans] by establishing standards of conduct, responsibility,

2

and obligation for fiduciaries and providing for appropriate remedies and ready access to the Federal Courts." *Varity Corp. v. Howe*, 516 U.S. 489, 513 (1996).   With ERISA, moreover, Congress sought to "ensure that plans and plan sponsors would be subject to a uniform body of benefits law," thus mitigating "the burden of complying with conflicting directives among States or between States and the Federal Government."  *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990).   "Suits to enforce the terms of the statute and to recover welfare benefits wrongfully withheld arise under federal law and can be brought in federal court without regard for the amount in controversy."  *Massachusetts v. Morash*, 490 U.S. 107, 113 (1989).

Severance pay plans or severance agreements – payments made by employers to employees who are involuntarily terminated – may be treated as employee welfare benefit plans under ERISA.  *See Clayton v. ConocoPhillips Co.*, 722 F.3d 279, 296 (5th Cir. 2013) *cert. denied*, 13-419, 2014 WL 102989 (U.S. Jan. 13, 2014).   For severance plans to be covered by ERISA, however, the plans must "by nature require[] an ongoing administrative program to meet the employer's obligation," because only such plans involve administrative activity "potentially subject to employer abuse."  *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 11, 15 (1987). In *Fort Halifax*, a Maine statute required employers to provide a one-time severance payment to employees in the event of a plant closing.  *Id.* at 3.   In finding that ERISA did not pre-empt such statute, the U.S. Supreme Court reasoned that a "one-time, lump-sum severance payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation."  *Id.* at 12.   "To do little more than write a check hardly constitutes the operation of a benefit plan [under ERISA]."  *Id.*

There are two types of ERISA preemption: complete and express preemption.  *Haynes v.*

*Prudential Health Care*, 313 F.3d 330, 333 (5th Cir. 2002).   "In general, complete preemption exists when a remedy falls within the scope of or is in direct conflict with ERISA § 502(a),[1] and therefore is within the jurisdiction of federal court."   *Id.*   Thus, whether state claims are completely preempted by § 502(a) primarily answers questions of jurisdiction.   *Id.* (citing *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 336 (5th Cir.1999)).   In this regard, "§ 502(a) functions as an exception to the well-pleaded complaint rule – Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character."   *Giles*, 172 F.3d at 336.   "Section 502, by providing a civil enforcement cause of action, completely preempts any state cause of action seeking the same relief, regardless of how artfully pleaded as a state action."   *Id.* (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 64-65 (1987)).

"Unlike the scope of § 502(a)(1)(B), which is jurisdictional and creates a basis for removal to federal court, § 514(a) governs the law that will apply to state law claims, regardless of whether the case is brought in state or federal court."   *Haynes*, 313 F.3d at 334.   Express preemption exists when a state law claim "relates to" ERISA plans unless it "regulates insurance" under § 514(a).   *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45 (1987).

## III.   Analysis

Plaintiff Gomez first argues that Ericsson's Severance Agreement is not a plan as defined by ERISA.   Given that no diversity exists between the Plaintiff and the Defendant, Gomez alleges that this Court lacks subject matter jurisdiction to adjudicate his claims against Ericsson.   Gomez further argues that his state law claim is not preempted by ERISA, because it is based on a liability

---

[1] Under ERISA § 502(a), a plan participant may bring a civil action to "recover benefits due to him under the terms of his plan."   29 U.S.C. § 11132(a)(1)(B).

independent of ERISA.   This Court will address each of these arguments in turn.

### a.  The Severance Agreement and Severance Plans Are Covered by ERISA

The Severance Agreement between Gomez and Ericsson incorporates by reference the terms of the Standard Plan and the Top Contributor Plan, providing that severance payment will be made according to these plan terms.   Thus, to determine whether the Severance Agreement falls within ERISA, this Court examines the terms and administrative schemes, if any, of the two severance plans.

Gomez contends that Ericsson's severance plans are not governed by ERISA, because (1) the plans are paid out of Ericsson's general assets and do not require a separate fund, (2) the plans do not require an ongoing administrative program, (3) the plans provide lump-sum, one-time payments calculated based on simple mathematical formulas and concerning single termination events, and (4) the plan provisions are sufficiently defined and detailed to minimize discretion. This Court disagrees.

From the outset, the Court notes that Ericsson's severance plans are sponsored for the benefit of over 10,000 employees nationwide, making the need for "a uniform body of benefits law" particularly compelling in this case.   *See Ingersoll-Rand*, 498 U.S. at 142.   While the plans are uninsured and funded through Ericsson's general assets, such plans may nonetheless be governed by ERISA if the employer has implemented an administrative scheme for paying benefits.   *See Fort Halifax*, 482 U.S. at 18 ("[I]f an employer has an administrative scheme for paying benefits, it should not be able to evade the requirements of the statute merely by paying those benefits out of general assets.").

Further, contrary to Gomez's allegation, the Court finds that an ongoing administrative

scheme does exist for Ericsson to make payments under the severance plans.  *Fort Halifax*, 482 U.S. 1 at 11.   Although the program, like the plan in *Fort Halifax*, was triggered by a single event (an employee's dismissal), "that event would occur more than once, at a different time for each employee."  *Tinoco v. Marine Chartering Co., Inc.*, 311 F.3d 617, 621 (5th Cir. 2002).   Ericsson has designated the Director of Benefits and HR Planning as the Plan Administrator of the Standard Plan and the Top Contributor Plan.   Both plans involve the exercise of significant discretion to determine an employee's eligibility to receive severance payments.  *See Clayton*, 722 F.3d at 296 (finding an ongoing administrative program necessary in light of the Trustee's claims eligibility discretion).   For instance, to become a participant under the Standard Plan, an eligible employee must "experience an employment loss due to an involuntary termination initiated by Ericsson in the form of a permanent layoff or reduction-in-force or a resignation for 'Good Reason.'"   In case that the employee's position is eliminated, he will not be eligible for severance payments if he has failed to accept "an alternative position with [Ericsson]" that is not more than 75 miles from his current location and that provides pay "not significantly lower than" the employee's current salary. The authority to determine whether a position is an "alternative position" and whether or not the pay is "significantly lower in the new position" lies exclusively with the Plan Administrator. Additionally, to determine eligibility triggered by "Good Reason" resignations, the Plan Administrator needs to decide whether the employee's position must be performed at a different work location and whether the change in work location will require a "material change" in geographic location for the employee.

Like the Standard Plan, the Top Contributor Plan also contains provisions which require the determination of a particular employee's eligibility.   For instant, the Top Contributor Plan

6

provides that a participant may be removed from the Plan if his performance has been deemed "unsatisfactory." Such satisfaction is determined, "in good faith, by the participant's Executive Management Team member or other senior manager and the Vice President of Human Resources in their sole discretion." The Top Contributor Plan further provides that the Plan Administrator shall determine the total amount of the "Enhanced Severance Benefit" to be paid to each participant upon the "Involuntary Termination" of each participant's employment from Ericsson.[2] Unlike the severance scheme in *Fort Halifax* which was triggered automatically by the occurrence of a single event and involved no more than writing a check, here for severance payments to be distributed to Ericsson employees, the Plan Administrator needs to make "ongoing discretionary decisions based on subject criteria." *Fort Halifax*, 482 U.S. at 12; *Tinoco*, 311 F.3d at 622. "There was no way to carry out that obligation with the unthinking, one-time, nondiscretionary application of the plan as did the administrators in *Fort Halifax*." *Id.* at 621 (citing *Bogue v. Ampex Corp.*, 976 F.2d 1319 (9th Cir. 1992)).

Therefore, the Court finds that Ericsson's Standard Severance Plan and Top Contributor Severance Plan both "by nature require[] an ongoing administrative program to meet the employer's obligation," based primarily on the Plan Administrator's authority to make on-going, discretionary decisions regarding an employee's plan eligibility. *Fort Halifax*, 482 U.S. at 12; *see Clayton*, 722 F.3d at 296. These severance plans and the Severance Agreement which incorporates by reference the plan terms are found to be covered by ERISA. *See Fort Halifax*, 482 U.S. at 12. Given that Gomez filed this lawsuit in this court to recover benefits due under the Standard Plan, Top Contributor Plan and the Severance Agreement, such remedy necessarily "falls

---

[2] Under the Top Contributor Plan, the "Enhanced Severance Benefit" shall equal 39 weeks' pay, less all required withholdings and other deductions including any offset amounts described in § 5 of the Plan. "Involuntary Termination" is defined as a separation from employment initiated by Ericsson due to layoff or reduction-in-force.

7

within the scope of…ERISA § 502(a)."  *Haynes*, 313 F.3d at 333; ERISA § 502(a) ("A civil action may be brought by a participant…to recover benefits due to him under the terms of his plan…").   Accordingly, complete preemption exists and Gomez's claim is properly within this Court's subject matter jurisdiction.   *Haynes*, 313 F.3d at 333.

### b.  Gomez's Breach of Contract Claim is Expressly Preempted by ERISA

Gomez further argues that, regardless of whether the two severance plans are covered by ERISA, the Severance Agreement itself is a separate document because it contains a condition that Gomez return all Ericsson property in his possession, which condition is not in the severance plans.   Gomez contends that his breach of contract claim based upon the Severance Agreement should be governed by state common law.   This, in essence, raises the question of whether or not Gomez's breach of contract claim is expressly preempted by ERISA.   *Id.* at 334.   The Court finds that it is expressly preempted.

The preemption clause of ERISA states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan [covered by ERISA]." ERISA § 514(a) (emphasis added).   This "deliberately expansive" provision of ERISA "is conspicuous for its breadth."   *Ingersoll-Rand Co.*, 498 U.S. at 138.   "A law 'relates to' an employee benefit plan…if it has a connection with or reference to such a plan."   *Id.* at 139.   A state law may "relate to" a benefit plan, "even if the law is not specifically designed to affect such plans."   *Id.*

In the Fifth Circuit, state law causes of action are barred by § 514(a) "if (1) the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claims directly affect the relationship between the traditional

ERISA entities – the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Weaver v. Employers Underwriters, Inc.*, 13 F.3d 172, 176 (5th Cir. 1994). In this case, both of these conditions are satisfied. First, by his claim for breach of contract, Gomez seeks to recover benefits due him "under the terms of the Standard Plan, Top Contributor Plan and the Settlement Agreement," all of which the Court has found to be covered by ERISA. Therefore, Gomez's right to receive benefits falls squarely within an "area[] of exclusive federal concern." *Id.* Second, since Gomez and his former employer Ericsson are the only parties in this lawsuit, Gomez's claims necessarily "affect the relationship between the traditional ERISA entities," i.e., the employer and the plan participant. *Id.* With both conditions satisfied, Gomez's breach of contract claim based upon the Settlement Agreement is expressly preempted by ERISA. *Id.*; ERISA § 514(a).

## IV.   Conclusion

For the reasons stated above, this Court concludes that jurisdiction is proper in this case and holds accordingly that Plaintiff Gomez's claim for severance payment due should be adjudicated under ERISA before this Court.

**So ORDERED and SIGNED this 22nd day of January, 2014.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE